IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| BVS, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:16-cv-0065-LTS |
| | ) | |
| v. | ) | BVS, INC.'S RESISTANCE TO RHUB |
| | ) | COMMUNICATION, INC.'S MOTION TO |
| RHUB Communications, Inc., | ) | DISMISS |
| | ) | |
| Defendant. | ) | |

Plaintiff, BVS, Inc., files this Resistance to Defendant RHUB Communications, Inc.'s Motion to Dismiss or in the Alternative Motion to Transfer Under 28 U.S.C. Section 1406(a).

**Introduction**

The issue before the Court is whether it can exercise personal jurisdiction over RHUB in the State of Iowa. The following four facts establish that jurisdiction is proper: (1) RHUB accepted $200,000 from BVS (an Iowa resident) for services RHUB contracted to perform; (2) RHUB has sold and shipped multiple computer servers and support services to Iowa residents during the past five years; (3) RHUB highlights the reputation of an Iowa company on its web site as a means to develop more business; and (4) RHUB recently breached a separate agreement with BVS that includes a forum selection clause identifying Linn County, Iowa as the appropriate forum for litigation. The Court should deny RHUB's motion to dismiss.

**Relevant Factual Background**

RHUB is in the business of selling hardware, software and support services to enable people to communicate/collaborate in realtime using the internet. *See* Deposition of Larry Dorie, at 5:17-18. Excerpts of Larry Dorie's deposition are attached as Exhibit 1. RHUB sells both products and services. Specifically, RHUB sells computer servers that have RHUB's software on them and also sells support for the software and servers. Ex. 1, Dorie depo., at 6:21-7:6. RHUB has employees in California, Texas and India. *Id.* at 10:9-18. RHUB has customers in 46 of the 50 States (including Iowa) and in 19 countries. *See* Customer List, filed as Exhibit 2.[1] RHUB serves customers via the web. RHUB does not have a store front but rather conducts business exclusively via electronic means. Ex. 1, Dorie depo., at 11:4-7.

RHUB's primary method of marketing/advertising involves its website. Ex. 1, Dorie depo., at16:9-11. Information on the website is approved by either Dorie or John Mao, the Chief Technology Officer, before going live. *Id.*, at 18:13-16. As part of its advertising, RHUB lists representative clients on its website, trying to capitalize on the clients' names and reputations. One such client is EMC Insurance, which is located in Des Moines, Iowa. *See* Affidavit of Natalie Ditmars, filed as Exhibit 3, at ¶3; RHUB Website screen shot, filed as Exhibit 4. RHUB currently has five customers in the State of Iowa. Ex. 1, Dorie depo., at 19:5-19. These customers pay RHUB annual maintenance fees for continued upgrades and support of the RHUB servers and software. Ex. 1, Dorie depo. at 19:22-20:20.

BVS and RHUB began their relationship in January 2014. At this time, BVS purchased servers from RHUB with RHUB developed software. RHUB shipped the servers to

---

[1] The customer state list does not identify Iowa. Dorie testified that Iowa should be on the list, but that he prepared the list believing everyone understood Iowa belongs on it. Ex. 1,Dorie depo. at 14:9-20..

BVS in Iowa. BVS purchased another set of servers with software in March 2014. Again, RHUB shipped the servers to BVS in Iowa. The Purchase Orders used in these transactions state: "This Agreement shall be governed by the laws of Iowa. Should a dispute arise concerning the products or this Agreement, the Court to determine the dispute shall be the state Court in Linn County, Iowa." Purchase Orders, filed as Exhibit 5. Since purchasing the servers, BVS has continued to pay the annual maintenance fee to RHUB for updates and support. Affidavit of Roy L. Karon, filed as Exhibit 6, ¶ 7. BVS has paid RHUB more than $139,000.00 for the servers, software and support services. *Id.* at 8; Server Agreement Invoices, filed as Exhibit 7.

In August 2014, BVS and RHUB entered into a different agreement that forms the initial basis for this lawsuit, namely the "ClickBranch Agreement." Under the ClickBranch Agreement, RHUB agreed to provide services to make changes and enhancements to its TurboMeeting Software to allow BVS to create the ClickBranch product. The Agreement is attached as Exhibit 8. The product was to be a video communications product allowing a bank or credit union customer or prospect to click on a button on the bank or credit union's website and talk via audio/video with a live company representative while they share screens and control those screens to conduct financial business. The ClickBranch Agreement required BVS to pay $200,000.00 to RHUB in exchange for a viable product and license to use the product with end users. Ex. 6, Karon Affidavit, ¶ 11.

Approximately seven RHUB software engineers worked with BVS on the ClickBranch Agreement. Four of the RHUB employees were in India and three were in California. Ex. 1, Dorie depo., at 39:24-40:13. BVS initiated this lawsuit due to RHUB's failures related to the ClickBranch Agreement.

In total, BVS has paid RHUB more than $339,000.00 in the past two years for both products and services. Ex. 6, Karon Affidavit, ¶¶ 8, 11;Ex. 7, Server Agreement invoices, ClickBranch Invoices, filed as Exhibit 9.

### Argument

The Court should exercise personal jurisdiction over RHUB, because: (1) RHUB's commercial activity involving Iowa residents is sufficient to establish personal jurisdiction in Iowa; (2) RHUB has consented to jurisdiction in Iowa; and (3) the maintenance of this suit in Iowa would not offend with traditional notions of fair play and substantial justice. Further, venue is proper in the Northern District of Iowa. BVS will address each point.

### Standards for Exercising Personal Jurisdiction

To establish personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction in the state. *Wells Dairy, Inc. v. Food Movers International, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010). If the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction. *Id.* The court must review the evidence in the light most favorable to the non-moving party. *VGM Financial Services v. Singh*, 708 F. Supp. 2d 822, 827 (N.D. Iowa 2010).

Personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment. *Fastpath, Inc. v. Arbela Technologies Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). Iowa's long-arm statute expands Iowa's jurisdictional reach to the widest due process

parameters; therefore, the issue is whether the exercise of jurisdiction comports with due process. *Id.*

Due process requires that a non-resident of the forum state have minimum contacts with the forum state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 291-92 (1980). "Analyzing the 'minimum contacts' requirement depends on whether the court's jurisdiction over a party is said to be specific or general." *Luverne Trust Equipment , Inc. v. Worldwide Equipment, Inc.*, 2016 WL 1171514, 2 (D.S.D. 2016). A forum may exercise specific jurisdiction when the cause of action arises out of or is related to the defendant's contacts with the forum state. A forum may exercise general jurisdiction when the defendant's contacts with the forum state are continuous and systematic. Both specific and general jurisdiction require that the defendant purposefully avail itself of the privilege of conducting activities in the forum state; thereby, invoking the benefits and protections of its laws. *Id.*

Courts use a five-part test to measure a defendant's contacts with the forum state: (1) the nature and quality of the contacts; (2) the quantity of the contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Wells Dairy, Inc.*, 607 F.3d at 518.

The starting point for any jurisdictional analysis based largely on internet contacts is the sliding scale approach established by *Zippo Mfg. Co., v. Zippo Dot Com, Inc.*, 572 F. Supp. 1119, 1124 (W.D.Pa. 1997) and adopted by the 8th Circuit. *Lakin v. Prudential Sec., Inc.,* 348 F. 3d 704, 710 (8th Cir. 2003). This approach first looks at the nature and quality of the commercial activity that an entity conducts over the internet. If a party asserts general jurisdiction, the Court

must also look at the quantity of the Defendant's contacts with the forum state via its website. *VGM Financial Services v. Singh*, 708 F. Supp. 2d at 838 (N.D. Iowa 2010). Jurisdiction is likely to be established where a Defendant conducts business over the internet by entering into contracts with residents of the jurisdiction that involve knowing and repeated transmission of computer files over the internet. *Zippo*, 572 F. Supp. at 1124.

I. **The Court Should Exercise Personal Jurisdiction.**

BVS submits that the Court should require RHUB Communications, Inc. to defend this matter in Iowa, for three primary reasons.

First, RHUB's commercial activity over the internet is sufficient to confer general personal jurisdiction in Iowa. The fact that RHUB provides its services via the internet, not via an actual store front, obviates the need for offices or employees in the state to establish personal jurisdiction. *See Lakin*, 348 F.3d 710. RHUB conducts business worldwide through its website, www.rhubcom.com and its website constitutes its main method of marketing and advertising. RHUB uses the very services it markets and sells to engage in customer relationships with Iowa residents; specifically web conferencing, audio conferencing, remote support and video conferencing servers. With only three physical locations, RHUB is able to conduct business in 46 states and 19 other countries. *See* Ex. 2.

Further, the quantity of RHUB's contacts with the state of Iowa support a finding of general jurisdiction. RHUB has sold products to numerous Iowa companies and non-profits including EMC Insurance, Prairie Lakes Education, West Liberty Foods, Quality Manufacturing and McKee Vorhees. RHUB has an ongoing support relationship with four of these companies.

It also bears heavy emphasis that RHUB uses its primary marketing tool, its website, to highlight one of its Iowa customers—EMC Insurance. *See* Ex. 3, Ditmars Affidavit; Ex. 4, RHUB Website screen shot. RHUB clearly values its business relationships with Iowa customers. It essentially uses an Iowa customer for free advertising. The Court should not permit RHUB to exploit its relationships with Iowa customers on the one hand and then disclaim any connection to Iowa on the other hand. RHUB's own conduct shows that it directs business efforts into the State of Iowa.

Second, RHUB consented to jurisdiction in Iowa when it accepted BVS' offer to purchase servers and videoconference meeting services in 2014 by shipping the goods. I.C.A. §554.2206(1)(a) ("an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods"). While these sales occurred in a different context than the ClickBranch Agreement, after BVS filed this lawsuit regarding the ClickBranch Agreement and after RHUB filed the pending motion to dismiss, RHUB breached the other agreements by failing to provide support services when BVS requested support. The written documents BVS and RHUB exchanged related to the servers specifically state that the "Agreement shall be governed by the laws of Iowa." *See* Ex. 5, Purchase Orders; Ex. 6, Karon Affidavit ¶ 6. [2] Having consented to jurisdiction in Iowa, RHUB has no claim to be surprised to be haled into Court in Iowa. *See Burger King v. Rudzewicz*, 471 U.S. 462, 481 (1985) (a choice of law provision reinforced defendant's deliberate affiliation with the forum state and the reasonable foreseeability of possible litigation there).

---

[2] BVS recently filed a Motion to Amend the Complaint to include claims relating to the Server Agreements. *See* Doc. No. 17. At the time of filing this Resistance, this Motion remains pending.

Third, the maintenance of jurisdiction will not offend notions of fair play and substantial justice. *Lakin*, 348 F.3d at 713. Iowa has a significant interest in giving Iowa corporations who conduct business with foreign corporations a forum to litigate their claims. RHUB chose to do business with BVS. RHUB chose to ship servers to BVS and other businesses in Iowa. RHUB attached itself to the reputation of an Iowa company – EMC Insurance – to try to generate more business.

Finally, BVS' key IT employees who worked on the project all are located in Iowa. *See* Ex. 6, Karon Affidavit, ¶ 11. Forcing BVS to litigate this matter in California would be unduly burdensome.

## II. Venue is Proper in Iowa.

Title 28 U.S.C. §1404(a) provides:

For the convenience of parties witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Courts must consider three general categories of factors when considering a motion to transfer: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Terra International, Inc. v. Mississippi Chemical Corporation*, 119 F.3d 688, 691 (8th Cir. 1997). In determining whether a change of forum is appropriate, courts give deference to the Plaintiff's choice of forum. *Id.*, at 695. "[A[ forum selection clause is a 'significant factor that figures centrally in the district court's calculus' in a motion to transfer."*Id.*, at 697.

Here, transferring the case to California would not be more convenient for the parties or the witnesses. As Dorie testified, seven RHUB employees worked on the ClickBranch project and four of them are located in India. Ex. 1, Dorie depo. at 39:20-40:13. Transferring the

case would not eliminate the potential need for those four employees to travel. Further, most if not all of the BVS employees who worked on the project are located in Iowa. And no one should be inconvenienced by the maintenance of this suit in Iowa given the fact that RHUB is a "premier provider of web conferencing." This technology should allow for seamless discovery regardless of distance.

Finally, given that RHUB accepted Purchase Orders from BVS stipulating to jurisdiction in Iowa for disputes related to the Server Agreements, the Court should maintain this forum. The forum selection clause is a significant factor. *Terra*, 119 F.3d at 697.

WHEREFORE, Plaintiff, BVS, Inc., respectfully requests that the Court deny RHUB's Motion to Dismiss or in the Alternative Motion to Transfer.

*/s/ Vernon P. Squires*
VERNON P. SQUIRES (#AT0007443)
BVS, Inc.
4060 Glass Rd. NE
Cedar Rapids, IA  52402
Direct Dial: (319) 378-1807
Email:  vsquires@bvs.com

*/s/ Natalie K. Ditmars*
NATALIE K. DITMARS (#AT0002151)
BRADLEY & RILEY PC
2007 First Avenue SE
P.O. Box 2804
Cedar Rapids, IA  52406-2804
Phone: (319) 363-0101
Direct Dial: (319) 861-8766
Fax:    (319) 363-9824
Email: nditmars@bradleyriley.com

ATTORNEYS FOR THE PLAINTIFF

Copy to:

Richard A. Stefani
Gray, Stefani & Mitvalsky PLC
425 Second Street SE, Suite 700
PO Box 456
Cedar Rapids, IA 52406-0456
*Attorney for Defendant*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of this document was served upon the persons listed on this document at the addresses indicated by CM/ECF electronic notification or by enclosing the same in an envelope with postage fully paid and by depositing said envelope in a United States Post Office depository this 8th day of September, 2016. I declare under penalty of perjury that the foregoing is true and correct.

                                                     */s/ Chanda Clark*