# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| BVS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RHUB COMMUNICATIONS, INC. <br><br> Defendant. | No. C16-0065-LTS <br><br> **MEMORANDUM OPINION AND ORDER** |

This matter is before me on a motion (Doc. No. 9) by defendant RHUB Communications, Inc. (RHUB) to dismiss this action for lack of personal jurisdiction, or alternatively, to transfer venue. Plaintiff BVS, Inc. (BVS), filed a resistance (Doc. No. 18) and RHUB filed a reply (Doc. No. 21). While that motion was pending, BVS filed a motion (Doc. No. 24) for leave to amend its complaint. The motion was granted (Doc. No. 27) and a first amended and substituted complaint (Doc. No. 28) was filed.

RHUB then filed a supplemental motion (Doc. No. 29) to dismiss for lack of personal jurisdiction, or alternatively, to transfer venue. BVS has filed a resistance (Doc. No. 30) and RHUB has filed a reply (Doc. No. 31). Neither party has requested oral argument. I find that oral argument is not necessary. *See* N.D. Ia. L.R. 7(c).

## I. BACKGROUND

BVS is an Iowa corporation with its principal place of business in Cedar Rapids, Iowa. RHUB is a California corporation with its principal place of business in San Jose, California. After BVS commenced this action in the Iowa District Court for Linn County, RHUB removed it to this court on the basis of federal diversity jurisdiction. *See* Doc.

No. 2. The state court petition (Doc. No. 3) asserted one count of breach of contract based on a "ClickBranch Agreement" (CB Agreement), attached to the petition as Exhibit 1. BVS contends that the parties entered into that agreement on or about August 22, 2014.

Pursuant to the CB Agreement, RHUB agreed to provide services and make changes and enhancements to its TurboMeeting Software to create the ClickBranch product. The intended outcome was a video communications product that would allow a bank or credit union customer, or prospective customer, to click on a button on the institution's website to initiate audio and visual communication with a live company representative while sharing screens to conduct financial business. BVS agreed to pay $200,000 to RHUB in exchange for a viable product and a license to use the product in the bank and credit union industry in the United States and other specified areas. The petition alleged that as of April 2016, RHUB's efforts resulted in a "nonviable product riddled with glitches and mistakes that render it unusable for BVS and end users." Doc. No. 3 at ¶ 9. BVS contends this failure to perform, or failure to perform in a reasonably competent and timely fashion, constitutes a breach of the CB Agreement.

BVS's first amended and substituted complaint (Doc. No. 27) adds another breach of contract claim (Count II) based on additional agreements. BVS alleges that on or about January 17, 2014, and March 17, 2014, BVS entered into written agreements with RHUB for the delivery and maintenance of certain servers and software (Server Agreements). BVS further alleges that the RHUB products, including those subject to the Server Agreements, come with a one-year warranty service, called RHUB Enable, that provides customers with software updates and technical support. After that warranty expires, customers may purchase additional warranty coverage on an annual basis to continue the RHUB Enable support services.

BVS alleges that it purchased additional warranty and upgrade services for its

RHUB servers after the initial warranties expired. BVS contends that as part of this service, RHUB agreed to provide software updates and technical support. From February 2015 through February 2016, RHUB allegedly invoiced BVS eight (8) times for services, software updates and support. BVS attached copies of the invoices to the first amended and substituted complaint. The most recent invoice purportedly extends warranty coverage through February 2017. BVS alleges RHUB breached the Server Agreements by refusing to perform support services in July 2016. BVS also seeks a declaratory judgment (Count III) regarding RHUB's alleged refusal to perform its obligations under the Service Agreements and asks the court to declare that RHUB is required to perform ongoing warranty and support services. Doc. No. 27 at ¶ 25.

It its initial motion and supplemental motion, RHUB argues that it is not subject to personal jurisdiction in Iowa. It contends that it is a California corporation and that its only connection to Iowa is BVS' solicitation to enter into an agreement through which RHUB's performance was to occur entirely in California. RHUB argues that the first amended and substituted complaint does not change the jurisdictional analysis. While BVS added an allegation that RHUB consented to jurisdiction in Iowa, RHUB denies that the Server Agreements, or any actions allegedly performed pursuant to those agreements, indicate its consent to jurisdiction in Iowa. It contends that this court should either dismiss this action or transfer venue to the Northern District of California.

## II.    DISCUSSION

A.    *Personal Jurisdiction*

   1.    *Standards Under Rule 12(b)(2)*

To survive a Rule 12(b)(2) motion to dismiss, the plaintiff must make a prima facie showing of jurisdiction. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011). This means the plaintiff is required to go beyond

the pleadings and come forward with affidavits and exhibits establishing jurisdiction. *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008). The court "may exercise jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Id.* at 1090 (internal quotations omitted).

In this case, Iowa's long-arm statute[1] "expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution." *Hammond v. Florida Asset Financing Corp.*, 695 N.W.2d 1, 5 (Iowa 2005) (citing *Hodges v. Hodges*, 572 N.W.2d 549, 552 (Iowa 1997)). "Due process requires sufficient 'minimum contacts' between the defendant and the forum state so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)). "The 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987).

There are two theories for evaluating personal jurisdiction: general and specific jurisdiction. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004). "Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." *Id.* (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)). Specific jurisdiction "is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state." *Dever*, 380 F.3d at 1073

---

[1] *See* Iowa R. Civ. P. 1.306 and Iowa Code § 617.3.

(quoting *Helicopteros*, 466 U.S. at 414). Both theories require "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The Eighth Circuit has identified the following factors to consider when evaluating whether the court has personal jurisdiction over a particular defendant:

(1) the nature and quality of [the defendant's] contacts with the forum state;

(2) the quantity of such contacts;

(3) the relation of the cause of action to the contacts;

(4) the interest of the forum state in providing a forum for its residents; and

(5) convenience of the parties.

*Myers v. Casino Queen, Inc.*, 689 F.3d 904, 911 (8th Cir. 2012) (citing *Precision Const. Co. v. J.A. Slattery Co., Inc.*, 765 F.2d 114, 118 (8th Cir. 1985) for the proposition that the first three factors are of primary importance and the last two of secondary importance). "The third factor distinguishes between specific and general jurisdiction." *Myers*, 689 F.3d at 911.

BVS argues jurisdiction may be established based on the following:

(1) RHUB accepted $200,000 from BVS for services RHUB contracted to perform;

(2) RHUB has sold and shipped multiple computer servers and support services to Iowa residents during the past five years;

(3) RHUB highlights the reputation of an Iowa company on its website as a means to develop more business; and

(4) RHUB breached the Server Agreement with BVS that

5

>includes a forum selection clause identifying Linn County, Iowa as the appropriate forum for litigation.

I will address each argument in turn.

### *2. Analysis*

#### *a. Acceptance of Payment for Contracted Services*

BVS argues I can find personal jurisdiction over RHUB based on its acceptance of $200,000 from BVS to create the ClickBranch product. BVS notes that it began its relationship with RHUB in January 2014 by purchasing computer servers that contained RHUB software. BVS made a second server purchase in March 2014. In August 2014, BVS and RHUB entered into the CB Agreement, which required BVS to pay $200,000 to RHUB in exchange for the ClickBranch product and a license. BVS attests it has paid the full $200,000. *See* Doc. No. 18-1 at 20.

Acceptance of payment for contracted services is generally insufficient to establish personal jurisdiction. *See Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) ("A contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state."). A prima facie case of specific personal jurisdiction requires that the *defendant* "'purposefully directed' [its] activities at residents of the forum" and that "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) and *Helicopteros*, 466 U.S. at 414). Stated another way, specific jurisdiction is proper only "where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state." *Fastpath*, 760 F.3d at 821 (quoting *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 694 (8th Cir. 2003)). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."

6

*Hanson*, 357 U.S. at 253. "[T]he relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Walden v. Fiore*, __U.S. __, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King Corp.*, 471 U.S. at 475).

The record demonstrates that BVS contacted RHUB to create the ClickBranch product and to purchase computer servers and support services. *See* Doc. No. 21-1 at 2 ("The only way to purchase products or services from RHUB is to contact RHUB directly at its office in California, which is the method BVS used to purchase products."); *Id.* at 4-7 (describing various invoices to BVS that indicate orders were placed through verbal or email communication). RHUB did not solicit BVS to make the purchases. *See id.* ("RHUB has a website that is RHUB's primary marketing tool . . . . That website primarily supplies potential customers with general information about RHUB's business and products."). The fact that RHUB fulfilled purchase orders from BVS, entered into an agreement to create a product for BVS and was paid by BVS does not establish that RHUB "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253. BVS has failed to establish personal jurisdiction on this basis.

### b.   *Sale and Shipment of Products to Forum Residents*

BVS' next argument focuses on RHUB's relationship with Iowa customers other than BVS. BVS points out that RHUB has six current customers in Iowa. Doc. No. 18-1 at 6. One of these customers is featured on RHUB's website. *Id.* at 16. Larry Dorie, President and CEO of RHUB, estimates that it derived approximately $3,000 to $4,000 in revenue from Iowa during the first half of 2016 and $10,000 during 2015.[2] *Id.* at 6. He further states that for the past five years, RHUB's Iowa sales have accounted for less

---

[2] These estimates exclude any income from BVS.

than two percent of its total sales in the United States for each year. *See* Doc. No. 21-1 at 7-8. Four of RHUB's Iowa customers have extended their maintenance contracts, meaning RHUB provides ongoing support services of the following nature to four Iowa companies:

> We provide advanced replacement in case the unit becomes defective. Software updates, we protect from obsolescence by updating the software on your server, and we can do that automatically. Technical support, if you need support you can have access to our support people. Continuous availability, if your product fails, we will put you up on our servers and give you accounts on our servers until your product is replaced. And audio conferencing service, we provide an external – what we call BSTN – audioconferencing service that we provide with the product that comes with it if you're on – if you subscribe to the warranty. If you don't subscribe to the warranty, you have to use the internal system, which is the speaker microphone that I'm using.

Doc. No. 18-1 at 6, 8. To put these contacts in context, RHUB does business in 46 states and 19 countries. *Id.* at 13.

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Contacts which are "random," "fortuitous" or "attenuated" are insufficient to establish general jurisdiction. *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008). "Merely entering into a contract with a forum resident does not provide the requisite contacts between a (nonresident) defendant and the forum state." *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 655 (8th Cir. 1982).

I find that RHUB's limited Iowa contacts do not rise to the level of systematic and continuous contacts such that RHUB could be considered to be "at home" in Iowa. First, nothing in the record suggests RHUB solicited business from these Iowa companies. Second, there is no indication that a RHUB representative has ever visited Iowa in

connection with one of these relationships. Third, the record suggests RHUB performs all services related to these customers in California, Texas or India, where its employees are located. Fourth, any ongoing maintenance and support services RHUB provides is at the customer's request upon payment of the annual maintenance fee. In other words, it is the third party that is maintaining the relationship, not RHUB. *See Burger King Corp.*, 471 U.S. at 475 ("Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state.'") (emphasis in original); *Hanson*, 357 U.S. at 253 (stating "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").

For these reasons, I find that BVS has not established that this court has general personal jurisdiction over RHUB based on RHUB's limited, unsolicited commercial relationships with Iowa companies.

### c. Internet Activity

BVS argues that two of RHUB's Internet activities establish personal jurisdiction: (1) listing an Iowa customer on its website[3] and (2) conducting business and providing services via the Internet. In considering the significance of Internet activity, the Eighth Circuit has adopted the sliding scale analysis developed in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). *See Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 710 (8th Cir. 2003). The *Zippo* court explained the analysis as follows:

---

[3] BVS has provided a screenshot of the website, which lists the Iowa customer along with four others from different states. Doc. No. 18-1 at 16. The website itself, www.rhubcom.com, contains a continuous scroll of various customers throughout the United States.

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo Mfg. Co.*, 952 F. Supp. at 1124 (citations omitted). In cases alleging specific jurisdiction, the *Zippo* analysis is sufficient to determine whether there are minimum contacts. However, when general jurisdiction is alleged, the Eighth Circuit requires the additional step of evaluating the quantity of the contacts with forum state residents. *Lakin*, 348 F.3d at 712.

RHUB argues it has a passive website under *Zippo* because it merely makes information available to interested users. RHUB supplies general information about its products and services and does not permit customers to purchase products directly through the website. *See* Doc. No. 21-1 at 2. To purchase products or services, customers must contact RHUB at its office in California. *Id.* Because its website does not meet the initial *Zippo* standard, RHUB argues BVS cannot establish general jurisdiction. In any event, BVS has not submitted any evidence or requested jurisdictional discovery to determine the number of Iowa residents who have accessed RHUB's website. Instead, BVS relies only on the number of RHUB's actual Iowa customers.

RHUB's website, without more, does not come close to establishing general jurisdiction in Iowa. Under the *Zippo* analysis, RHUB maintains a passive website. It is not interactive and requires customers to contact RHUB directly in order to purchase

its products or services. Nor is RHUB's advertisement of an Iowa customer on the website noteworthy. There is no indication that RHUB provides this information for the purpose of targeting Iowa residents or soliciting business from Iowa. Instead, the identities of the Iowa customer and various customers from other states are available to all who view RHUB's website. *See VGM Financial Servs. v. Singh*, 708 F. Supp. 2d 822, 839 (N.D. Iowa 2010) (finding that a website listing six Iowa medical practitioners who used third party defendant's products was insufficient to establish general jurisdiction without more). RHUB's website does not give rise to general jurisdiction over RHUB in Iowa.

The same is true regarding RHUB's business activities on the Internet. BVS alleges that RHUB conducts business exclusively via electronic means and provides its services via the Internet. As such, RHUB is able to conduct business in 46 states, including Iowa, and 19 other countries. In Iowa, RHUB has six customers and provides ongoing support services for four of them. The services are provided through electronic communication, including video conferencing and remote access.

Of course, in analyzing whether there is personal jurisdiction, "it is essential that 'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law.'" *VGM Financial Servs.*, 708 F. Supp. 2d at 836-37 (quoting *Burger King Corp.*, 471 U.S. at 475). There is no evidence that RHUB reached into Iowa to solicit its Iowa customers or specifically marketed to Iowa residents via the Internet. While RHUB maintains an ongoing relationship with four Iowa customers by providing remote support services, this is at the request of (and upon payment by) those customers on an annual basis. The support services occur only after the Iowa customer contacts RHUB. *See* Doc. No. 18-1 at 3 (stating that if a customer has an issue requiring technical support, the customer contacts RHUB's support organization). The record is clear that it is the

customers' actions that maintain the relationships, not RHUB's.

Finally, the fact that RHUB utilizes the Internet to meet the needs of its customers is not particularly relevant, as the Internet is not an Iowa-specific form of communication. RHUB did not purposely avail itself of the privilege of conducting activities in Iowa simply by using the Internet. RHUB's Internet activities do not give rise to personal jurisdiction in Iowa.

### d. Forum Selection Clause

BVS also attempts to establish personal jurisdiction based on a choice of law and forum selection clause contained in purchase orders that were drafted and issued by BVS. These purchase orders were for servers that contained RHUB software and state: "This Agreement shall be governed by the laws of Iowa. Should a dispute arise concerning the products or this Agreement, the Court to determine the dispute shall be the state Court in Linn County, Iowa." *See* Doc. No. 18-1 at 17-18. BVS' President attests that BVS has continued to pay the annual maintenance fee to RHUB for updates and support for the servers. *Id*. at 19-20. H further states that BVS has paid more than $139,000 for the servers, software and support. *Id*.

BVS argues that RHUB agreed to the terms of the purchase orders based on Iowa Code § 554.2206(1). This provision of Iowa's Uniform Commercial Code states, in relevant part: "Unless otherwise unambiguously indicated by the language or circumstances . . . an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods." Thus, BVS argues that RHUB's shipment of the servers after receipt of BVS' orders bound RHUB to the choice of law and forum selection clauses.

RHUB acknowledges that it shipped the servers to BVS in Iowa after receiving the

purchase orders. It argues, however, that the purchase orders do not apply to any dispute over support services BVS claims it was entitled to receive in 2016, or to the CB Agreement. The servers were purchased in 2014 and included the RHUB Enable service for one year. After that, BVS separately purchased RHUB Enable support for these servers on an annual basis. *See* Doc. No. 21-1 at 3. RHUB states, by affidavit, that BVS did not purchase the RHUB Enable support services by issuing written purchase orders but, instead, through verbal or email communication. *See* Doc. No. 21-1 at 3-7. Therefore, RHUB argues the purchase orders BVS relies upon are immaterial to this dispute and should not apply.

RHUB also argues the forum selection clauses in BVS' purchase orders do not apply because RHUB shipped the servers with its End-User License Agreements, which specify the application of California law and state that they:

> are the entire agreement between you and RHUB relating to the Product and the support services (if any) and they supersede all prior or contemporaneous oral or written communications, proposals and representations with respect to the Product or any other subject matter covered by this EULA.

*See* Doc. No. 21-1 at 3; Doc. No. 21-2 at 2. RHUB relies on Iowa Code § 554.2207 to argue that the terms of BVS' purchase orders were superseded by the End-User License Agreements. Section 554.2207 states:

1. A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

2. The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

    a. the offer expressly limits the acceptance to the terms of the offer;

13

b. they materially alter it; or

c. notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Iowa Code § 554.2207. RHUB argues that "[t]here is no evidence BVS notified RHUB of objections to the terms of the End-User License Agreement." Doc. No. 21 at 7. It further argues that "[t]he End-User License Agreements constitute written confirmations within the meaning of § 554.2207 and the additional terms they contained should be enforced." *Id*. at 8.[4] However, the BVS purchase orders state: "No BVS purchase is authorized without a copy of this purchase order, accepting these terms by signing below by the Seller and returning to BVS." *See* Doc. No. 18-1 at 17-18. Thus, this is a classic "battle of the forms" situation.

I need not wade further into this UCC morass because I find that the question of whether RHUB is subject to jurisdiction in Iowa is not dependent upon which boilerplate form (if any) controls. There is no evidence that the forum selection clauses in BVS' purchase orders were communicated and negotiated between the parties. Because the ultimate inquiry is whether RHUB purposely invoked the benefits and protections of Iowa law, it is important to consider whether RHUB affirmatively submitted to Iowa law and an Iowa forum through negotiations with BVS. *See, e.g., Servewell Plumbing, LLC v. Federal Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006) (courts generally honor a forum selection clause if it was "the fruit of an arm's-length negotiation").

---

[4] RHUB appears to assume that BVS is a "merchant," meaning "a person who deals in goods of the kind or otherwise by the person's occupation holds that person out as having knowledge or skill peculiar to the practices or goods involved in the transaction." *See* Iowa Code § 554.2104(1). While the current record is not definitive on this point, the available information supports RHUB's assumption. The CB Agreement contemplated that RHUB and BVS would "work together" to develop the ClickBranch product and that the product would include software developed or supplied by BVS. *See* Doc. No. 28 at 11. The CB Agreement also included RHUB's grant of a license to BVS to reproduce and distribute the product to end users. *Id*.

Here, Dorie states by affidavit that he does not recall seeing the purchase order forms from BVS and notes that the exhibits submitted by BVS are not signed by an RHUB representative. He adds, "RHUB did not and would not have agreed to the terms of the purchase order included on these forms, particularly the [forum selection clause and choice of law clause]." Doc. No. 21-1 at ¶ 7. This is consistent with the CB Agreement, the one written agreement of record that was negotiated and signed by the parties, as that agreement does not specify an Iowa forum. Doc. No. 28 at 11-12. BVS has submitted no evidence suggesting that the parties' negotiations included discussions of a forum selection clause. I find that BVS' boilerplate purchase order terms are not particularly relevant to the question of whether RHUB purposely availed itself of the privilege of conducting activities in Iowa.

### e. *Personal Jurisdiction -- Conclusion*

BVS has failed to establish personal jurisdiction as to RHUB under the five factors considered by the Eighth Circuit: (1) the nature and quality of [the defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents and (5) convenience of the parties. *Myers*, 689 F.3d at 911. RHUB's limited contacts with Iowa have been initiated by the actions of Iowa residents, not by actions on the part of RHUB that were purposefully directed at Iowa. RHUB maintains a passive website such that any potential customer interested in its products or services must contact RHUB in California. RHUB does not have a physical presence in Iowa and conducts its business with Iowa residents solely through mail and electronic communications. Moreover, RHUB has just six Iowa customers and provides ongoing support services to four of those customers. RHUB conducts business in 46 states and 19 countries and its sales of computer servers to Iowa customers account for no more than two percent of its

annual sales over the past five years. *See* Doc. No. 21-1 at 7-8.

BVS' causes of action clearly relate to RHUB's contacts with Iowa, as BVS is one of RHUB's Iowa customers and claims that RHUB has failed to fulfill its contractual obligations. While this factor weighs in favor of jurisdiction, it is somewhat mitigated by the fact that RHUB's services were performed in California and other locations, not in Iowa. As for Iowa's interest in providing a forum for its residents to litigate contract disputes, that interest is not compelling where, as here, the Iowa resident chose to conduct business with an entity outside of Iowa that does not directly solicit Iowa customers. Finally, the convenience of the parties is a neutral factor. An Iowa forum would be convenient for BVS but not for RHUB, which is based in California and has employees in California, Texas and India.

Having considered and weighed the relevant factors, I conclude BVS has failed to meet its burden of showing that this court has personal jurisdiction over RHUB.

## B. Venue

Because personal jurisdiction is lacking, I must consider whether the appropriate disposition is dismissal or a transfer of venue. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Based on my finding that RHUB is not subject to personal jurisdiction in Iowa, venue is not appropriate in this district. *See* 28 U.S.C. § 1391.[5] When both personal jurisdiction and proper venue are absent, a district court has the authority to transfer venue to another district under Section 1406(a). *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (holding that Section 1406(a) "is amply broad

---

[5] Under Section 1391, venue is proper where a defendant "resides" and a corporate defendant "resides" where it is subject to personal jurisdiction. *See* 28 U.S.C. § 1391(b)-(c).

enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."); *see also Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 584 (8th Cir. 2007) (citing *Goldlawr* for the proposition that Section 1406(a) "grants district courts the power to transfer cases for lack of personal jurisdiction, as well as for improper venue").

I find a transfer of venue, rather than dismissal, to be in the interests of justice. RHUB argues that venue is appropriate in the Northern District of California because RHUB resides in that District, preliminary negotiations of the CB Agreement took place there and RHUB performed its services there. I agree. Accordingly, I find this case should be transferred to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1406(a).

### III. CONCLUSION

For the reasons stated herein:

1. RHUB's motion (Doc. No. 9) and supplemental motion (Doc. No. 29) to dismiss for lack of personal jurisdiction or, alternatively, transfer venue are **granted in part and denied in part**. The motions are **denied** as to the request for dismissal but are **granted** as to RHUB's alternative request to transfer venue to the Northern District of California.

2. The Clerk shall transfer this case to the United States District Court for the Northern District of California.

**IT IS SO ORDERED.**

**DATED** this 6th day of February, 2017.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE